IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

ORINTHID JABBAR HAYES,

      Petitioner,

v.                                                  Case No. 5:17cv057-MCR/CAS

JULIE L. JONES,

      Respondent.

_____/

## REPORT AND RECOMMENDATION TO DENY § 2254 PETITION

On February 20, 2017, Petitioner Orinthid Jabbar Hayes, proceeding

pro se, filed a petition for writ of habeas corpus pursuant to 28 U.S.C.

§ 2254, with attachments.   ECF No. 1.   On January 19, 2018, Respondent

filed an answer and exhibits.   ECF No. 18.   Petitioner has not filed a reply,

although given an opportunity to do so.   *See* ECF No. 21.

The matter was referred to the undersigned United States Magistrate

Judge for report and recommendation pursuant to 28 U.S.C. § 636 and

Northern District of Florida Local Rule 72.2(B).   After careful consideration

of all issues raised, the undersigned has determined that no evidentiary

hearing is required for disposition of this case.   *See* Rule 8(a), R. Gov.

§ 2254 Cases in U.S. Dist. Cts.   For the reasons stated herein, the

pleadings and attachments before the Court show Petitioner is not entitled

to federal habeas relief, and this § 2254 petition should be denied.

## Background and Procedural History

Petitioner Orinthid Jabbar Hayes was arrested and ultimately charged by amended information with three counts in Washington County Circuit Court case number 11-00037CF, in connection with events that took place on or about January 11, 2011: (1) home invasion robbery with a deadly weapon, contrary to section 812.135, Florida Statutes; (2) burglary with assault or battery, contrary to section 810.02(1) and (2)(a), Florida Statutes; and (3) grand theft, contrary to section 812.014(1) and (2)(c), Florida Statutes. Ex. A at 19.[1] Hayes proceeded to a jury trial on July 26, 2012. Exs. D-F. Hayes did not testify during the trial. Ex. F at 324-27. On July 27, 2012, the jury returned a verdict, finding him guilty as charged of home invasion robbery and specifically finding he did not carry a weapon. *Id*. at 410-11; Ex. A at 76-77. On September 13, 2012, the trial court judge adjudicated Hayes guilty and sentenced him to thirty (30) years in prison. Ex. A at 90-94.

---

[1]Hereinafter, all citations to the state court record, "Ex. –," refer to exhibits submitted with Respondent's answer, ECF No. 18.

Hayes appealed his judgment and sentence to the First District Court of Appeal (DCA), assigned case number 1D12-4901.   Ex. A at 99; *see* Exs. G (Initial Brief), H (Answer Brief).   On August 22, 2013, the First DCA per curiam affirmed the case with a written opinion.   Ex. I; Hayes v. State, 118 So. 3d 1008 (Fla. 1st DCA 2013).   The mandate issued September 9, 2013.   Ex. I.

On October 17, 2013, Hayes filed a motion for post-conviction relief in the state trial court, pursuant to Florida Rule of Criminal Procedure 3.850. Ex. J (Case Abstract).   He filed amended motions on February 27, 2014, *id.* at 1-15, and July 16, 2014, *id.* at 40-50.   On December 3, 2014, the state post-conviction court rendered a non-final order denying in part the amended Rule 3.850 motion and directing the State to file a response.   *Id.* at 51-57.   After the State filed a response, Ex. L at 546-51, and Hayes filed a reply, *id.* at 559-69, the state court summarily denied post-conviction relief by order rendered June 4, 2015.   *Id.* at 570-74 (exclusive of attachments).   Hayes appealed to the First DCA and filed an initial brief, assigned case number 1D15-3058.   Ex. N (Initial Brief).   The State did not file an Answer Brief.   *See* Ex. O.   The First DCA per curiam affirmed the

case without a written opinion on November 5, 2015.   Ex. P; <u>Hayes v. State</u>, 178 So. 3d 400 (Fla. 1st DCA 2015) (table).   The mandate issued December 1, 2015.   Ex. P.

On April 28, 2016, Hayes filed a Motion to Correct Illegal Sentence, pursuant to Florida Rule of Criminal Procedure 3.800(a).   Ex. Q.   The state court denied the motion in an order rendered June 14, 2016.   Ex. R. Hayes did not appeal the order.

On July 20, 2016, Hayes filed a Petition for Writ of Habeas Corpus in the First DCA, assigned case number 1D16-3347, alleging ineffective assistance of appellate counsel.   Ex. S.   The First DCA denied the petition as untimely on August 29, 2016.   Ex. T.

As indicated above, Hayes filed a § 2254 petition in this Court on April 6, 2016.   ECF No. 1.   He raises ten (10) grounds, including seven (7) grounds alleging ineffective assistance of counsel (IAC):

(1)  Trial Court Error – "Standard jury instruction that Petitioner 'must' be considered principal instead of 'may' as defined by statute violates Due Process Clause."   *Id.* at 9.

(2)  Trial Court Error – "Victim's testimony that Petitioner is former prisoner violates Due Process Clause."   *Id.* at 11.

(3)  Trial Court Error – "State's closing argument shifting burden

of proof to the defense violates Due Process Clause."    *Id*. at 13.

(4)   IAC – Defense counsel "fail[ed] to [move to] dismiss charges where state lacked jurisdiction to try case."    *Id*. at 15.

(5)   IAC – Defense counsel "failed to [file] motion to suppress self-incriminating statements."    *Id*. at 18.

(6)   IAC – Defense counsel "fail[ed] to file motion to suppress suggestive photo lineup."    *Id*. at 20.

(7)   IAC – Defense counsel "fail[ed] to call witnesses for the defense."    *Id*. at 22.

(8)   IAC – Defense counsel "misadvis[ed] Petitioner not to testify."    *Id*. at 24.

(9)   IAC – Defense counsel "fail[ed] to call expert witness for defense."    *Id*. at 27.

(10) IAC – Defense counsel "fail[ed] to properly challenge race-neutral juror strikes."    *Id*. at 29.

Respondent filed an answer, with exhibits.    ECF No. 18.    Hayes has not

filed a reply, although given the opportunity to do so.    *See* ECF No. 21.

## Analysis

Pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and

Effective Death Penalty Act of 1996 (AEDPA), federal courts may grant

habeas corpus relief for persons in state custody.    Section 2254(d)

provides, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).   *See, e.g.,* Cullen v. Pinholster, 563 U.S. 170, 180-83 (2011); Gill v. Mecusker, 633 F.3d 1272, 1287-88 (11th Cir. 2011).   "This is a 'difficult to meet' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'"   Cullen, 563 U.S. at 181 (quoting Harrington v. Richter, 562 U.S. 86, 102 (2011), and Woodford v. Visciotti, 537 U.S. 19, 24 (2002)). This Court's review "is limited to the record that was before the state court that adjudicated the claim on the merits."   *Id*.

For IAC claims, the U.S. Supreme Court has adopted a two-part test:

> First, the defendant must show that counsel's performance was deficient.   This requires showing that counsel made errors so

serious that counsel was not functioning as the "counsel"
guaranteed the defendant by the Sixth Amendment.   Second,
the defendant must show that the deficient performance
prejudiced the defense.   This requires showing that counsel's
errors were so serious as to deprive the defendant of a fair trial,
a trial whose result is reliable.

Strickland v. Washington, 466 U.S. 668, 687 (1984).   To demonstrate

ineffectiveness, a "defendant must show that counsel's performance fell

below an objective standard of reasonableness."   *Id.* at 688.   To

demonstrate prejudice, a defendant "must show that there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different."   *Id.* at 694.   "A reasonable

probability is a probability sufficient to undermine confidence in the

outcome."   *Id.*   For this Court's purposes, importantly, "[t]he question 'is

not whether a federal court believes the state court's determination' under

the Strickland standard 'was incorrect but whether that determination was

unreasonable – a substantially higher threshold.'"   Knowles v. Mirzayance,

556 U.S. 111, 123 (2009) (quoting Schriro v. Landrigan, 550 U.S. 465, 473

(2007)).   "And, because the Strickland standard is a general standard, a

state court has even more latitude to reasonably determine that a

defendant has not satisfied that standard."   *Id.*   It is a "doubly deferential

judicial review that applies to a Strickland claim evaluated under the

§ 2254(d)(1) standard." *Id.*

## <u>Ground 1:</u>   **Trial Court Error – Jury Instruction**

In his first ground, Petitioner Hayes essentially argues the trial court erred in overruling defense counsel's objection to the standard jury instruction for principals.   That instruction directed the jury that the defendant "must" be considered a principal under the circumstances, whereas the statute directs the defendant "may" be so considered.

Petitioner presented this ground in state court as the first point in his direct appeal.   Ex. G at i, 9-13.   The First DCA affirmed and wrote a brief opinion "only to briefly address Appellant's novel challenge to the jury instruction on principals."   <u>Hayes v. State</u>, 118 So. 3d 1008 (Fla. 1st DCA 2013).   In pertinent part, the court found no error and the court's opinion provides:

The standard instruction reads:

If the defendant helped another person or persons [commit] [attempt to commit] a crime, the defendant is a principal and ***must*** be treated as if [he] [she] had done all the things the other person or persons did if:

1.   the defendant had a conscious intent that the criminal act be done and

2.   the defendant did some act or said some word

which was intended to and which did incite, cause, encourage, assist or advise the other person or persons to actually [commit] [attempt to commit] the crime.

To be a principal, the defendant does not have to be present when the crime is [committed] [or] [attempted]. *See* State v. Dene, 533 So. 2d 265 (Fla. 1988).

Fla. Std. Jury Instr. (Crim) 3.5(a) (emphasis added).   The instruction implements section 777.011, Florida Statutes, which provides:

**Principal in first degree**. – Whoever commits any criminal offense against the state, whether felony or misdemeanor, or aids, abets, counsels, hires, or otherwise procures such offense to be committed, and such offense is committed or attempted to be committed, is a principal in the first degree and ***may*** be charged, convicted, and punished as such, whether he or she is or is not actually or constructively present at the commission of such offense.

§ 777.011, Fla. Stat. (2010) (emphasis added).

Appellant argues the instruction incorrectly states the law because it says a defendant "must" be treated as a principal if the evidence establishes the requisite criteria, while the statute uses the permissive "may."   On the contrary, under section 777.011, a person who "commits any criminal offense . . . or aids, abets, counsels, hires, or otherwise procures such offense to be committed . . . *is a principal* in the first degree" (emphasis added).   The statute, thus, defines "principal."   The standard jury instruction, in setting forth the circumstances under which a defendant "must be treated" as a principal, comports with, and elaborates on, the statutes definition of

> "principal."   The statutory phrase "may be charged, convicted,
> and punished as such" does not create "a permissive
> [evidentiary] inference of principal," as Appellant asserts.
> Rather, the phrase explains the criminal consequences a
> defendant faces if he or she is found to be a principal in the first
> degree, as defined in the statute.

Hayes, 118 So. 3d at 1009-10.   This constitutes a ruling on the merits and

is entitled to AEDPA deference.   *See* 28 U.S.C. § 2254(d); Harrington, 562

U.S. at 98-100.

The record and Florida law support the state courts' rulings.   The trial

judge instructed the jury on the law of principals as set forth in the Standard

Jury Instructions.   *See* Ex. F at 395; § 777.011, Fla. Stat. (2010); Fla. Std.

Jury Instr. (Crim.) 3.5(a).   As the First DCA explained in its opinion

affirming Hayes' conviction and sentence, the statute defines "principal in

the first degree" and the standard jury instruction sets forth the

circumstances under which a defendant must be treated as a principal

based on that definition.

Petitioner Hayes has not shown that the state court's rejection of this

ground involved an unreasonable application of clearly established federal

law or that it was based on an unreasonable determination of the facts.

*See* 28 U.S.C. § 2254(d)(1)-(2).   Accordingly, this ground should be

denied.

### Ground 2:   Trial Court Error – Victim's Testimony

In his second ground, Petitioner Hayes argues the state trial court erred in overruling defense counsel's objection and motion to strike the testimony of the victim, when the victim mentioned during cross-examination that Hayes had previously been in prison.   ECF No. 1 at 11. Petitioner presented this ground in state court as the second point in his direct appeal.   Ex. G at i, 14-15.   As indicated in the analysis of Ground 1, *supra*, the First DCA affirmed and wrote a brief opinion addressing only the jury instruction issue.   Hayes, 118 So. 3d at 1008-10.   Nonetheless, the First DCA's affirmance constitutes a ruling on the merits and is entitled to AEDPA deference.   *See* 28 U.S.C. § 2254(d); Harrington, 562 U.S. at 98-100.

The record supports the state courts' ruling.   In particular, a review of the trial transcript reflects defense counsel opened the door and/or invited the comment during cross-examination of the victim, Richard Bowden:

Q.   . . . Now you had met Giselle through a girl named Roxy, right?

A.   Yeah, Roxy Nickolas.

Q.   And Roxy lives over there in Garden Apartments?

A.   Yes, ma'am.

Q.   That's in Marianna, Jackson County, right?

A.   Right.

Q.   Giselle, she lives over there, too, or stayed over there?

A.   I guess so, yeah.

Q.   And Roxy, is it Nickolas or Nicholson?

A.   Nickolas.

Q.   Nickolas.   So Ms. Nickolas, she also told you about Mr. Hayes, hadn't she?

A.   Yeah, she said Rimp had –

Q.   You don't have to tell me what she said.

A.   Okay.

Q.   She told you about him?

A.   Right.

Q.   So you were aware of him?   Is that a yes?

A.   Yes.

Q.   And she made you aware of him about a month before this happened?

A.   Right.

Q.   Do you remember telling the investigators when they interviewed you that Roxy told you about Mr. Hayes so you kind of put two and two together?

A.   She just told me to, that Rimp was out of prison, need to look out for him.   I don't know what that meant, whether he was going to come rob me or what.

MS. FORGUE [defense counsel]:   Objection, Your Honor, motion to strike that statement.

THE COURT:   Approach side-bar.

(Side-bar conference:)

THE COURT:   All right, Ms. Forgue, the question you posed elicited that response, so you are objecting to your own question.

MS. FORGUE:   Well, I warned him not to tell me what she had said, just if he was aware of him.

THE COURT:   Okay.   Well, I am going to deny the objection overruling it.   You opened the door and if you are going to cross examine him, you probably need to have a tighter rein. But Ms. Jefcoat has instructed any other witnesses, make sure they are testifying only as to the facts in this case, not as to anything that would be unduly prejudicial to the Defendant, such as prior history.

MS. JEFCOAT:   Sure.

(Side-bar conference concluded)

BY MS. FORGUE:

Q.   You were aware of who Mr. Hayes was prior to this incident?

A.   Right.

Ex. D at 39-41.   While the part of the response indicating that Hayes "was out of prison" was prejudicial, it does not appear unduly or unfairly so, given the circumstances, including that defense counsel repeatedly asked the questions (whether Bowden was aware of Hayes) that resulted in that response.   *See, e.g.*, <u>Jackson v. State</u>, 213 So. 3d 754, 775 (Fla. 2017) ("Although irrelevant evidence of prior criminal activity is presumptively harmful, *see* <u>Straight v. State</u>, 397 So. 2d 903, 908 (Fla. 1981), an isolated or stray reference to a defendant's prior incarceration is considered in the context of the trial and does not necessarily result in a mistrial.   *See* <u>Fletcher v. State</u>, 168 So. 2d 186, 207 (Fla. 2015) . . . .").   Nothing indicates this was critical to facts at issue in, or became a feature of, the trial.   *See, e.g.*, <u>Jackson</u>, 213 So. 3d at 776 (explaining that "[w]hen determining whether such a remark vitiated the defendant's right to a fair trial, reviewing courts have often considered whether the fact of a prior conviction or incarceration was critical to any facts at issue during the trial").   From the context, defense counsel evidently wanted Bowden to testify only that Roxy Nickolas had warned him about Hayes and to look out for Hayes, not that Hayes was out of prison, as defense counsel mentioned this in the closing argument:

> Let's talk about why Mr. Bowden might want to see Mr. Hayes
> out of the picture.   He knows he's sleeping with the same
> woman that he's sleeping with, not happy about that.   Told him
> to be on the look out for him, whatever that means, we don't
> know.   So might Mr. Bowden have had a motive to want Mr.
> Hayes arrested for this crime?

Ex. F at 357.

Petitioner Hayes has not shown that the state court's rejection of this ground involved an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(1)-(2).   Accordingly, this ground should be denied.

### Ground 3:   Trial Court Error – Burden of Proof

In his third ground, Petitioner Hayes argues the prosecution shifted the burden of proof during the closing arguments.   ECF No. 1 at 13. Petitioner presented this ground in state court as the third point in his direct appeal.   Ex. G at i, 16-17.   As discussed in the analysis of Grounds 1 and 2, *supra*, the First DCA affirmed and wrote a brief opinion "only to briefly address Appellant's novel challenge to the jury instruction on principals." Hayes, 118 So. 3d at 1008-10.   Nonetheless, the First DCA's affirmance constitutes a ruling on the merits and is entitled to AEDPA deference.   *See* 28 U.S.C. § 2254(d); Harrington, 562 U.S. at 98-100.

The record supports the state courts' ruling.   In particular, a review of the trial transcript reflects the prosecutor's unobjected-to comments during closing argument did not constitute an attempt to shift the burden to the defense.   Those comments are identified in the Initial Brief filed in the direct appeal, Ex. G at 16-17 n.1.   The first identified comment occurred during the prosecutor's initial closing argument and appears in bold, *infra*:

> We already talked about the law of principals but evidence of being a principal:   Richard Bowden was the victim of a home-invasion robbery.   That's been undisputed.   He was the victim of a home-invasion robbery.   Whichever story you believe, whether you believe that it was Richard Bowden – I am sorry, whether you believe it was the Defendant, himself, who went inside that night or whether you believe it was his cousin, Mr. Bowden was robbed of his money and property a little bit of his dignity as he was having to run outside naked and chase him down.
>
> The Defendant discussed committing the robbery with Sukanec.   If you recall the testimony of Giselle Sukanec, she said they had talked about it for at least a month.   She was joking she said, but she told him this night to go do it, and that if he didn't she would find somebody else.   And that he agreed to go over there, that he knew what they were doing when they went over there.   Again, the Defendant agreed to participate in the robbery.   Nobody made him do that.   That was his choice and his actions.   The Defendant is the one who provided the car that they used to get to the victim's house and then also to get away from the crime scene.
>
> If you believe the Defendant's version of events, the Defendant recruited the person who actually went and physically perpetrated the crime.   The Defendant went to the

victim's home with the intent that Richard Bowden be robbed.

Now, members of the jury, remember that with the exception of the Defendant recruiting his cousin to participate in the crime, everything that is on this page is completely undisputed. **This is the evidence of the case. There is no evidence to contradict that the victim was robbed. There's no evidence to contradict that the Defendant discussed committing this robbery and agreed to participate in this robbery. There's no evidence to contradict that the evidence provided the car to be used in the crime scene, or that the Defendant intended for the robbery to take place.**

Ex. F at 349-51 (bold emphasis for comments quoted in Initial Brief). The

remaining identified comments occurred during the prosecutor's rebuttal

closing, after defense counsel's closing, and appear in bold, *infra*:

Members of the jury, the presumption of innocence does not mean the Defendant is actually innocent. It's just a starting point, and that starting point has been chipped way from the State's very first witness to the very last witness. There's been a discussion of motive. Who had a motive in this case and basically the argument is well because they were romantic rivals, the victim, Mr. Bowden, would have a reason just to make up the Defendant was involved in this crime. Well, that cut[s] both ways because here you have the Defendant who is messing around with Giselle Sukanec. Apparently, according to him, that's his girlfriend. According to her she loves him and yet she's going over to another man's house; she's at best nude cuddling with him, if you believe what the Defendant says that they didn't have intercourse and he's buying her stuff, that's just as much reason for him to want to go and commit a robbery on this guy, messing with his woman. And the fact that there's been some indication that there's all these people that don't like the Defendant for various reasons and that Mr.

Bowden was upset about the Defendant's relationship with Giselle Sukanec or that law enforcement was somehow out to get the Defendant, that's all speculation. **There's been zero evidence of that**. Remember, jurors, it is to the evidence that has been admitted at trial and to the Judge's law that you are to base your decision.

. . . . There is no reason to disbelieve the Defendant's statement. Did the Defendant sound intimidated to you? Did he sound like he was being coerced, that he had been threatened, did he sound scared, were those officers yelling at him using bad language? No. In fact, if you listen to his statement, there's times when he corrects the officers, no, that's not the way we went; no, it didn't go this way or it was this way rather than that. They are having a conversation, and to submit that he came down there and decided to confess to robbery just to make the officers happy, members of the jury, he had details about this, details that even the victim never stated. He talked about how leaving the place they splashed through puddles, how he was telling Giselle to slow down so we don't get pulled over in Cottondale, who sat where in the vehicle. He said that Brittany, he told her he might have to put the car in the shop. My recollection of Brittany Barnes' testimony, and remember it's your recollection that you are to rely upon, but my recollection was that she said I don't remember if I told law enforcement about the car, him telling me the car being damaged, it's possible. He also testified about giving Brittany money, which is the same amount Brittany said she got from him, $150. He doesn't have a job. **I don't have any evidence to support where that came from.** The law has no motive, it treats all defendant's the same and it also protects all victims the same. . . .

. . . .

. . . . I want you guys to be clear, the Defendant's statement that was put in evidence, that is evidence, that is evidence, and according to his statement he was in that car at

the time of the robbery which was right around midnight.
That's evidence.   Giselle Sukanec said that the Defendant, he
was there.   Sometimes she said he was in the car; sometimes
she says he's in the house doing the robbery but he was there,
he was a participant.   There has been no evidence that the
Defendant just gave Giselle Sukanec a name and that she went
and found somebody else to do that robbery.   **There has been
zero evidence of that**.   And remember, members of the jury, a
reasonable doubt can't be based upon a mere possibility or a
speculative doubt.

*Id.* at 371-78 (bold emphasis for comments quoted in Initial Brief).

In Florida, both the State and the defense have wide latitude in

closing arguments.   *See* Ford v. State, 802 So. 2d 1121, 1129 (Fla. 2001).

In federal habeas, "[t]he relevant question is whether the prosecutor's

comments 'so infected the trial with unfairness as to make the resulting

conviction a denial of due process.'" Darden v. Wainwright, 477 U.S. 168,

181 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637 (1974)). The

comments must have been improper and have rendered the trial

fundamentally unfair.   United States v. Eyster, 948 F.2d 1196, 1206 (11th

Cir.1991).

A review of this record does not indicate the prosecutor's comments

rose to such a level as to result in an unfair trial or deprivation of due

process. *See* Darden, 477 U.S. at 181.   Indeed, a fair reading of these

statements reveals the prosecutor indicating to the jury what the State had

proven in the case and the prosecutor's view of the evidence, particularly in

response to the defense closing argument that Hayes gave his statement

to law enforcement while intimidated by the officers and that the victim had

a motive to implicate Hayes because the victim was upset that both he and

Hayes had a relationship with the same woman, Giselle Sukanec.   *See,*

*e.g.*, U.S. v. Morris, 568 F.2d 396, 401 (5th Cir.1978) ("The purpose of

summations is for the attorneys to assist the jury in analyzing, evaluating,

and applying the evidence. . . . The assistance permitted includes counsel's

right to state his contention as to the conclusions that the jury should raw

from the evidence. Therefore, an attorney's statements that indicate his

opinion or knowledge of the case as theretofore presented before the court

and jury are permissible if the attorney makes it clear that the conclusions

he is urging are conclusions to be drawn from the evidence."); Scott v.

State, 66 So. 3d 923, 930 (Fla. 2011) (holding "[t]he prosecutor's

commentary, which stated that Scott's alibi witnesses were never asked

about whether the recorded voice was Scott's went no further than to point

out the lack of evidence to support Scott's alternative theory and that the

State's evidence on this matter was uncontradicted"); Poole v. State, 997

So. 2d 382, 390 (Fla. 2008) (concluding that prosecutor's comments

regarding lack of evidence that someone else could be responsible for victims' injuries constituted proper, invited response to Poole's denial of guilt for crimes involving injuries).   In addition, as found by the state court, both the prosecutor and defense counsel indicated the State had the burden of proof to prove beyond a reasonable doubt the elements of the charges.   Ex. F at 334-45, 368-71.

Petitioner Hayes has not shown that the state court's rejection of this ground involved an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(1)-(2).   Accordingly, this ground should be denied.

### <u>Ground 4</u>:   IAC – Motion to Dismiss for Lack of Jurisdiction

In his fourth ground, Petitioner Hayes argues his trial counsel provided ineffective assistance by not filing a motion to dismiss the charges for lack of jurisdiction.   ECF No. 1 at 15.   Petitioner raised this ground in state court as the first claim in his February 2014 amended Rule 3.850 motion.   *See* Ex. J at 3-4.   The state post-conviction trial court summarily denied the claim, making the following findings:

> In **Ground 1**, the Defendant alleges that the trial court did
> not have jurisdiction in this case, and counsel was ineffective

for failing to challenge venue.   Specifically, Defendant submits that the crime occurred in Jackson County, Florida and not Washington County, Florida.   However, Defendant's argument is procedurally barred and should have been raised on direct appeal.   Regardless, Defendant's allegations are without merit and refuted by the attached record.   (*See* attached Charging Document, *see also* Affidavit Complaint, Trial Transcript excerpts 07/26/12 Morning Session, at pg. 17 (Richard Bowden testifying) and Trial Transcript excerpts 07/26/12 Afternoon Session, at pg. 229 (Investigator Jeremy Pelfrey testifying). Additionally, Defendant's allegations are conclusory in nature to warrant relief.   *See* Kennedy v. State, 547 So. 2d 912 (Fla. 1989) ("A defendant may not simply file a motion for post conviction relief containing conclusory allegations that his or her trial [counsel] was ineffective and then expect to receive an evidentiary hearing.").   Further, counsel is not ineffective for failing to file motions that have no merit.   *See* Magill v. State, 457 So. 3d 1367 (Fla. 1984).   While counsel may be ineffective for failing to investigate a valid defense, the defense in question must be viable.   *See* Panagiotakis v. State, 619 So. 2d 345 (Fla. 2d DCA 1993).   Finally, Defendant's claims of trial court error are not cognizable under Rule 3.850.   *See* Johnson v. State, 985 So. 2d 1215 (Fla. 1st DCA 2008); *see also* Swanson v. State, 984 So. 2d 629 (Fla. 1st DCA 2008) citing Hodges v. State, 885 So. 2d 338, 366 (Fla. 2004) (holding that claims of trial court error should be raised on direct appeal, not in a rule 3.850 motion).   Therefore, Defendant's ground is due to be denied.

Ex. J at 51-52.   On appeal, the First DCA affirmed without a written opinion.   This constitutes a ruling on the merits and is entitled to AEDPA deference.   *See* 28 U.S.C. § 2254(d); Harrington, 562 U.S. at 98-100.

The record supports the post-conviction court's finding that this claim

lacks merit.   In particular, Hayes alleges in support of his claim that the crime occurred in Jackson County, not Washington County; however, the record reflects the charging information as well as the arrest warrant indicate the crime occurred in Washington County.   Ex. A at 1-4, 19. Additionally, Richard Bowden and Jeremy Pelfrey testified at trial that the crime occurred in Washington County.   Ex. D at 16-17, Ex. E at 229. Thus, as the state post-conviction court concluded, Hayes did not show deficient performance by counsel or prejudice resulting from not filing a motion to dismiss on this basis.

Petitioner Hayes has not shown that the state court's rejection of this ground involved an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(1)-(2).   Accordingly, this ground should be denied.

### Ground 5:   IAC – Motion to Suppress Statement

In his fifth ground, Petitioner Hayes asserts his trial counsel provided ineffective assistance by not filing a motion to suppress the statement he made to law enforcement.   ECF No. 1 at 18.   Petitioner raised this ground in state court as part of the second claim in his February 2014 amended

Rule 3.850 motion.    *See* Ex. J at 4-6.    The state post-conviction trial court

summarily denied the claim, making the following findings:

> In **Ground 2**, Defendant alleges that counsel was
> ineffective for . . . failing to file a motion to suppress
> Defendant's self-incriminating statements used at trial against
> him . . . .
>
>         . . . [H]e submits that trial counsel was advised that for a
> period of almost an hour, he was brow-beaten, threatened and
> made promises of leniency by the detectives Cook and Pelfrey
> prior to making a statement.    Further, Defendant argues that
> the statement was made solely upon deceptive promises by law
> enforcement.    It should also be noted that, even in an
> interrogation by a law enforcement officer, deception does not
> equate to coercion.    *See* Wyche v. State, 906 So. 2d 1142
> (Fla. 1st DCA 2005) ("Deception does not negate consent.
> Absent coercion, threats or misrepresentation of authority, the
> courts have long recognized deception as a viable and proper
> tool of police investigation.").    However, Defendant's
> allegations are without merit and refuted by the attached
> record.    (*See* Trial Transcript excerpt 07/26/12 Afternoon
> Session at pp. 192-227 (Defendant's taped statement played to
> the jury during Investigator Jeremy Pelfrey's testimony).    The
> record reflects that the Defendant's statement to law
> enforcement was freely and voluntarily entered after he waived
> his Miranda rights.    Thus, counsel is not ineffective for failing to
> file motions that have no merit.    *See* Magill v. State, 457 So. 2d
> 1367 (Fla. 1984).    While counsel may be ineffective for failing
> to investigate a valid defense, the defense in question must be
> viable.    *See* Panagiotakis v. State, 619 So. 2d 345 (Fla. 2d
> DCA 1993).    Accordingly, counsel is not ineffective for failing to
> raise a meritless claim.    *See* Farina v. State, 937 So. 2d 612,
> 619 n.5 (Fla. 2006) (quoting Teffeteller v. Dugger, 734 So. 2d
> 1009, 1023 (Fla. 1999) for the proposition that "Trial counsel
> cannot be deemed ineffective for failing to raise meritless
> claims or claims that had no reasonable probability of affecting

> the outcome of the proceeding.")).   Therefore, Defendant's
> claim as to suppressing his statement to law enforcement is
> due to be denied.

Ex. J at 52-53.   On appeal, the First DCA affirmed without a written

opinion.   This constitutes a ruling on the merits and is entitled to AEDPA

deference.   *See* 28 U.S.C. § 2254(d); Harrington, 562 U.S. at 98-100.

The state court record supports the post-conviction court's finding

that Hayes' statement to law enforcement was freely and voluntarily made

after he was advised of, and waived, his Miranda rights.   In particular,

Investigator Jeremy Pelfrey testified at trial that Hayes turned himself in to

law enforcement, at the Washington County Sheriff's Office, on January 18,

2011.   Ex. E at 171.   Pelfrey spoke with Hayes that day and witnessed

Investigator Cook reading Hayes his Miranda rights.   *Id.*; Ex. F at 309-10.

Pelfrey signed the Miranda form and recorded the statement by Hayes.   *Id.*

Ex. E at 171.   The recording was admitted into evidence at trial, as State's

Exhibit D, and played for the jury.   Ex. E at 172, 174, 192-227.   During the

recorded statement, Hayes acknowledges he has been read his Miranda

rights and that he has signed a waiver of those rights.   *Id.* at 194.

Accordingly, as the state court concluded, defense counsel cannot be

ineffective for not filing a meritless motion.

Petitioner Hayes has not shown that the state court's rejection of this ground involved an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(1)-(2).   Accordingly, this ground should be denied.

### Ground 6:   IAC – Motion to Suppress Photo Lineup

In his sixth claim, Petitioner Hayes argues trial counsel provided ineffective assistance because he did not file a motion to suppress the photo lineup.   ECF No. 1 at 20.   Petitioner raised this ground in state court as part of the second claim in his February 2014 amended Rule 3.850 motion.   *See* Ex. J at 4-6.   After ordering the State to respond, the post-conviction trial court summarily denied the claim, making the following findings:

> In **Ground 2(B)**, the Defendant alleges counsel was [i]neffective for failing to suppress an improperly suggestive photo lineup that resulted in the victim's identification of defendant as the robber.   Defendant alleges that the fact that the detectives told the victim that the person who robbed him was one of the six pictures presented in the photo-pack was highly suggestive and illegal.   Defendant also indicates the photo-pack consisted of 5 black males with dark skin and one black male with light skin, the defendant (Def. Memorandum pg. 5).
>
> First, it appears that defendant's allegation that law

enforcement told the victim, Richard Bowden, that the suspect was one of the individuals pictured in the photo-pack is without merit.   At trial, at first Richard Bowden did indicate (TT 26, line 22) he was told that the suspect was within the photopack. However, he repeatedly clarified that was not the case upon further questioning. (TT 27, lines 8-9, TT 49 line 1).   In his deposition (pg. 23), Richard Bowden, indicated that he was told to identify the suspect if he was within the pack.   Also, Jeremy Pelfrey's report (pg. 9 of 12), deposition (beg. Pg. 33, 38 lines 5-13) filed with the Court and trial testimony (TT 166, 317) are contrary to defendant's allegations.

Second, defendant's allegations as to the description of the lineup appear to be without merit.   The photo lineup was admitted into evidence (TT 166, State's Exhibit A) and was available as part of the record for the Court to review as a basis in summarily denying defendant's claim.   *See also* (TT 321-322, 359) and Deposition and Testimony of Officer Jeremy Pelfrey.

Regardless, even if defendant's allegations were true it does not necessarily mean the photo lineup was unduly suggestive, prejudicial or illegal.   A photo array is not improperly suggestive where all of the pictures portray persons of similar general characteristic or description, such as age, race, build or hairstyle, and no one photograph is unduly emphasized to suggest one suspect over another.   *See, e.g.*, Green v. State, 641 So. 2d 391 (Fla. 1994) (Photographic lineup was not unnecessarily suggestive, even though police officer told witness that police had six pictures they wanted witness to look at and that suspect was within those six pictures; All six photographs depicted men with similar characteristics, and although defendant Green's photo was darker than the others, there was no evidence that the police directed the victim's attention to it); Francois v. State, (Photographic lineup by which witness to attempted robbery at discount store identified defendant as the perpetrator was not unnecessarily suggestive, even though witness initially

identified perpetrator as being an employee of the store chain,
and defendant was only employee of chain in the lineup;
computer database selected photographs for the lineup based
on similarity to defendant, and due process did not require
other employees of chain to be included in lineup).   Therefore,
Defendant's ground is due to be denied.

Ex. L at 571-72.   On appeal, the First DCA affirmed without a written
opinion.   This constitutes a ruling on the merits and is entitled to AEDPA
deference.   *See* 28 U.S.C. § 2254(d); Harrington, 562 U.S. at 98-100.

The state court record supports the post-conviction court's findings
that, contrary to Hayes' allegations, law enforcement did not tell the victim
that the photo pack included a photo of the suspect.   *See* Ex. D at 26-27,
49; 166-67.   In addition, as the state court found, the photo line-up was
admitted into evidence.   Ex. E at 166 (State's Exhibit A).   Investigator
Pelfrey testified he advised the victim, Richard Bowden:   "I was going to
show him a photo line-up and that if he sees anybody in the photo line-up
that he knows or is involved in this case to let me know and circle.   If you
don't see nobody, if you're not sure, don't worry about it."   Ex. E at 166-67;
*see id.* at 27-28, 48-49 (testimony of Bowden); Ex. F at 317-18.   Bowden
selected a picture of Hayes, circled it, initialed it, and put the time and date
on it.   Ex. E at 28, 167.   Pelfrey described the line-up as six numbered
photos, all with the same color background and all depicting black males.

Ex. E at 168.   On recross, Pelfrey testified the photo of Hayes was not a

darker shot than the others.   Ex. F at 321-22.   Pelfrey agreed that Hayes'

skin looked darker than the other individuals.   *Id.* at 322.   Thus, as the

state post-conviction court found, Pelfrey's testimony contradicts Hayes'

description of the line-up.   *See* Ex. J at 22 (post-conviction memorandum

by Hayes in which he asserts "the detective who gave [the victim] the photo

pack to select a possible suspect, did advise him that the person who

robbed him was in the pack which consisted of 6 photographs which

depicted 5 dark skin black males and one light-skinned Black male (the

defendant)").   The state court found that, even if Hayes' allegations were

true, it did not follow that the photo line-up was unnecessarily suggestive,

prejudicial or illegal.   *See, e.g.*, Cikora v. Dugger, 840 F.2d 893, 897 (11th

Cir.1988) (concluding that photo lineup was not impermissibly suggestive

where, among other things, all photos in the lineup depicted white men with

some degree of facial hair and only Cikora's photo had height markings).

Petitioner Hayes has not shown the state court's rejection of this

ground was either (1) contrary to, or involved an unreasonable application

of, clearly established U.S. Supreme Court precedent, or (2) based on an

unreasonable determination of the facts in light of the evidence presented

in the state court proceeding.    *See* 28 U.S.C. § 2254(d)(1)-(2).    This

ground should be denied.

## Ground 7:   IAC – Defense Witnesses

In his seventh ground, Petitioner Hayes asserts his trial counsel

provided ineffective assistance by not calling as defense witnesses Lamont

Rhynes, Deputy Douglas Smith, and Roxie Nicholas.   ECF No. 1 at 22.

Petitioner raised this ground in state court as the third claim in his February

2014 amended Rule 3.850 motion.    *See* Ex. J at 6-7.   After the State filed

a response, the post-conviction trial court summarily denied the claim,

making the following findings:

> In **Ground 3**, the Defendant alleges counsel was
> ineffective for failing to locate, interview, depose and call three
> potential witnesses who would have given exculpatory
> testimony on defendant's behalf.   These three witnesses are
> Lamont Rhynes, Deputy Douglas Smith and Roxie Nicholas.
>
> Lamont Rhynes is defendant's cousin.   Defendant[]
> alleges that Lamont Rhynes would have given testimony that it
> was he who went inside the victim's home and not the
> defendant and that defendant was only present in the vehicle
> and in no way involved in the planning of or discussion of the
> robbery.   Lamont Rhynes was deposed.   *See* Deposition
> Lamont Rhynes filed in the Court record on 7/17/12.   Lamont
> Rhynes testimony was anything but exculpatory for defendant.
> Defendant's allegations as to Lamont Rhynes are without merit
> and refuted by the record.   *See also* (TT 289-290).
>
> Deputy Douglas Smith was the initial officer on the scene

in the middle of the night who did not really do much in terms of investigating and did not initially believe the victim's report to law enforcement.    *See* Depositions filed with Court and Trial Testimony Victim Richard Bowden, Officer Jeremy Pelfrey. The record reflects that counsel did attempt to depose Deputy Smith.    *See* Defendant's Notice of Taking Depositions Filed 4/27/12.    Deputy Doug Smith was unavailable and no longer with the department.    (TT 268, 313).    Regardless, all throughout the trial, through other witnesses and closing argument, the defendant elicited the fact that the first officer, Deputy Smith, did not find the evidence that Investigator/Officer Pelfrey found when he went to the scene and continued investigating that morning.    (TT pg. 361).    Defendant's allegations shall be denied because the record demonstrates that this witness was unavailable and that even if the witness was available, defendant cannot demonstrate prejudice.

Roxie Nicholas was a female friend of the victim Richard Bowden who had introduced the victim to his friend and now co-defendant Giselle Sukanec.    Defendant alleges that Roxie Nicholas' testimony would have negated victim Richard Bowden's testimony that Roxie had shown him a photograph of the defendant on her phone because Roxie never had such a photograph.    Defendant also [i]ndicates Roxie Nicholas would have testified that when Roxie told the victim that defendant, a black man, was involved with Giselle the victim vowed to get rid of defendant.    Defendant claims the testimony of Roxie Nicholas would have supported the defendant's theory that the victim intentionally fabricated the identity of the defendant as the person who robbed him since the victim had not been able to see the actual robber and that this was the case of a jilted paramour obtaining revenge and nothing more.

However, defendant's own statement, which was played at trial, implicated defendant as at least a principal to this offense.    Defendant himself acknowledged he was present and involved in this offense which completely deflated his jilted paramour defense.    Also, defendant said in his statement that

> the victim had seen defendant on Giselle's phone.   (TT 224).
> Giselle Sukanec also testified that the victim had previously
> seen a picture of defendant.   (TT 153).   Victim Richard
> Bowden thought he had previously seen a photo of defendant
> on Roxie's phone or that he had maybe seen defendant looking
> at vehicles at the junkyard.   Regardless, no matter what the
> victim said, defendant himself put defendant at the scene with
> plans for the victim to be robbed.   The Court finds that
> Defendant cannot demonstrate prejudice and his ground is due
> to be denied.

Ex. L at 572-73.   On appeal, the First DCA affirmed without a written

opinion.   This constitutes a ruling on the merits and is entitled to AEDPA

deference.   *See* 28 U.S.C. § 2254(d); Harrington, 562 U.S. at 98-100.

The state court record supports the post-conviction court's findings.

In particular, the deposition testimony of Lamont Rhynes indicates he is

Hayes' cousin.   Ex. M at 685.   Rhynes testified he did not know anything

about the incident giving rise to the charges in this case.   *Id.* at 685-86.

Rhynes testified he "had nothing to do it" and he had just gotten out of

prison and did not want to go back.   *Id.* at 686-87.   He testified he was

with Brittany Barnes that night.   *Id.* at 687.   Rhynes also testified, "And I

hate to say it, that's my cousin, he – I don't know what to say about that

dude.   Don't too many people in the family mess with him because he's a

compulsive liar."   *Id.*   Thus, as the state post-conviction court determined,

Rhynes' testimony "was anything but exculpatory" for Hayes.

As to Deputy Douglas Smith, the initial officer on the scene after the incident, the record reflects he did not initially believe the victim's report, as the state court indicated.   *See* Ex. F at 264-66, 312; Ex. L at 595.   As the state court also explained, however, defense counsel did attempt to depose Smith, but he was unavailable and no longer with the department.   *See* Ex. M at 694; Ex. F at 312-13.   And, regarding any prejudice, the court concluded Hayes could not demonstrate such because, from the testimony of other witnesses, Deputy Smith did not find the evidence that Investigator Pelfrey found.   Ex. F at 264-66, 269.

As to Roxie Nicholas, as the state court found, she is a friend of the victim and she had introduced the victim to Giselle Sukanec.   As the state court also found, any potential testimony by Ms. Nicholas, if as alleged by Hayes regarding the victim having fabricated the incident, would have contradicted Hayes' own recorded statement to law enforcement.   In that recorded statement, played for the jury, Hayes admitted he was present and involved in the offense.   Ex. E at 203-10, 223-27.   Thus, the record supports the state court's conclusion that Hayes cannot demonstrate prejudice.

Petitioner Hayes has not shown the state court's rejection of this

ground was either (1) contrary to, or involved an unreasonable application

of, clearly established U.S. Supreme Court precedent, or (2) based on an

unreasonable determination of the facts in light of the evidence presented

in the state court proceeding.   *See* 28 U.S.C. § 2254(d)(1)-(2).   This

ground should be denied.

### <u>Ground 8</u>:   IAC – Petitioner Not Testifying at Trial

In his eighth ground, Petitioner Hayes argues defense counsel

provided ineffective assistance by misadvising him not to testify at trial.

ECF No. 1 at 24.   Petitioner raised this ground in state court as the fourth

claim in his February 2014 amended Rule 3.850 motion.   Ex. J at 8-10.

After receiving a response from the State, the post-conviction court denied

the claim, making the following findings:

> In **Ground 4**, the Defendant alleges counsel was
> ineffective for misadvising defendant that if he testified the jury
> would not only learn he had prior convictions but learn the
> specific nature of those prior convictions and the fact that he
> had served prison time.   Defendant indicates he was
> concerned his battery conviction would indicate to the jury that
> he had a propensity for violence.   Defendant alleges that had
> he not been misadvised he would have testified which would
> have changed the outcome of the trial.   Defendant cites to
> <u>Tyler v. State</u>, 793 So. 2d 137 (Fla. 2d DCA 2001), indicating
> that his allegations satisfy the deficient performance prong of
> an ineffective assistance of counsel claim.   However, that
> same case indicates that defendant must also show how he
> was prejudiced by the deficient performance in order to be

entitled to post conviction relief.    Even if defendant's allegations regarding counsel's advice were true, which is highly doubtful, the Court finds that the defendant has not shown how he was prejudiced.

First, as the Court pointed out in the order directing a State response, the record reflects that the Court inquired as to defendant's understanding of his right to testify.    (TT pgs. 323-327).    Defense counsel indicated she had spoken with defendant at length about his right to testify.    *Id.*    In Ground 4 defendant indicates (Def. Mot. Pg. B) that he would have testified that his only involvement in this matter was to introduce his cousin (Lamont Rhynes) to the co-defendant, Giselle Sukanec, who was the initiator of the crime.    However, this testimony would be contrary to the Defendant's own statement which was played at trial for the Jury.    There was conflicting accounts as to who actually got out of the car and went to the door, whether it was defendant or his cousin Lamont Rhynes, but the record reflects that by all accounts, including defendant's own statement, defendant was present and involved enough to the extent that he was at least a principal and this was basically the State's argument in closing.    Thus, Defendant's ground is due to be denied.

Ex. L at 573.    On appeal, the First DCA affirmed without a written opinion.

This constitutes a ruling on the merits and is entitled to AEDPA deference.

*See* 28 U.S.C. § 2254(d); Harrington, 562 U.S. at 98-100.

The state court record support's the post-conviction court's finding

that the trial transcript reflects the judge inquired about Hayes'

understanding of his right to testify.    Ex. F at 323-35.    In particular, the

trial transcript includes the following:

THE COURT:   All right.   We are again on the record.   The record reflects that Mr. Hayes is again present.   Mr. Hayes, I had given you an opportunity to take a brief restroom break, I knew that was weighing on your mind but now I need to ask you, based on what your attorney has represented, she has indicated that you will not be testifying today and I need to advise you, sir, that you do have the fundamental right to testify in this trial.   And that is a right that you possess and only you can decide whether you wish to or not.   You certainly are free to rely upon advice from competent counsel but ultimately the decision rests with you and you alone.   So I ask you then, sir, what is your decision as far as testifying in this trial here today?

THE DEFENDANT:   I won't testify, sir.

THE COURT:   You understand, sir, that it is your constitutional right and you could, if you so wish?

THE DEFENDANT:   Yes, sir.

THE COURT:   Likewise, if you are later complaining that you were not allowed to testify that will fall on deaf ears because now is the time for you to make that decision, you understand that?

THE DEFENDANT:   Yes, sir.

THE COURT:   Are you being forced or threatened to not testify in this matter?

THE DEFENDANT:   No, sir.

THE COURT:   Is anybody promising you anything or guaranteeing you any result by not testifying?

THE DEFENDANT:   No, sir.

THE COURT:   Are you today, sir, under the influence of any

medication or drugs or alcohol or any type of intoxicating substance that would cause your judgment to be impaired?

THE DEFENDANT:   No, sir.

THE COURT:   Okay.   Do you believe, sir, that it is in your best interest, given all that you know about this case, to make your decision not to testify?

THE DEFENDANT:   Yes, sir.

THE COURT:   Any further inquiry you wish for me to make, Ms. Forgue?

MS. FORGUE [Defense Counsel]:   If I could just briefly address a couple of things on the record.

THE COURT:   Yes, ma'am.

MS. FORGUE:   Mr. Hayes, you and I have had several discussions regarding your right to testify, is that right?

THE DEFENDANT:   Yes, ma'am.

MS. FORGUE:   I have advised you of all the risks involved in doing so?

THE DEFENDANT:   Yes, ma'am.

MS. FORGUE:   We have had, you had plenty of opportunity to make that decision on your own, correct?

THE DEFENDANT:   Yes, ma'am.

MS. FORGUE:   You are making this decision on your own –

THE DEFENDANT:   Yes, ma'am.

MS. FORGUE:   -- knowing what the risk of testifying and not testifying are?

THE DEFENDANT:   Yes, ma'am.

MS. FORGUE:   Okay.

THE COURT:   All right.   Mr. Hayes, I do find you are making this decision freely and voluntarily and upon advice of competent counsel, but that you have made this decision independent of your attorney, understanding that it is your constitutional right to testify. . . .

Ex. F at 324-27.   Further, the state court record supports the court's finding that Hayes' proposed testimony conflicts with his own statement to law enforcement (State's Exhibit D) that was played during the trial. *Compare* Ex. J at 8-10 *with* Ex. E at 171-72, 192-227.

Petitioner Hayes has not shown the state court's rejection of this ground was either (1) contrary to, or involved an unreasonable application of, clearly established U.S. Supreme Court precedent, or (2) based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.   *See* 28 U.S.C. § 2254(d)(1)-(2).   This ground should be denied.

### Ground 9:   IAC – No Defense Expert Witness

In his ninth ground, Petitioner Hayes argues defense counsel provided ineffective assistance by not calling an expert witness for the

defense.   ECF No. 1 at 27.   Petitioner raised this ground in state court as

the fifth claim in his February 2014 amended Rule 3.850 motion.   Ex. J at

10-11.   The state post-conviction court summarily denied the claim,

making the following findings:

> In **Ground 5**, the Defendant alleges that counsel was
> ineffective for failing to procure and call an expert witness.
> Specifically, Defendant submits that counsel should have
> obtained a Board Certified Ophthalmologist or Optometrist to
> testify at his trial due to the victim's identification of the
> Defendant being questionable because the victim suffered from
> impaired vision due to cataracts.   Defendant contends that had
> counsel sought out and obtained the services of a qualified
> expert, the jury could have been properly informed as to the
> effects that cataracts have on the normal vision and the
> difficulty that a person who suffered from cataracts such as the
> victim to discern images.
>
> However, the Defendant's allegations fail to establish
> either prong of <u>Strickland v. Washington</u>, 466 U.S. 668, 687
> (1984).   Further, Defendant's allegations are conclusory in
> nature to warrant relief.   *See* <u>Kennedy v. State</u>, 547 So. 2d 912
> (Fla. 1989) ("A defendant may not simply file a motion for post
> conviction relief containing conclusory allegations that his or her
> trial [counsel] was ineffective and then expect to receive an
> evidentiary hearing.").   Regardless, trial counsel vigorously
> cross-examined the victim on this issue and raised Defendant's
> inconsistent statements and testimony with the jury during
> examination and in closing arguments.   (*See* attached Trial
> Transcript excerpts 07/26/12 Morning Session, at pp. 33-58;
> *see also* Trial Transcript excerpts 07/27/12 Afternoon Session,
> at pp. 354-371).   Therefore, Defendant's ground is due to be
> denied.

Ex. J at 53-54.   On appeal, the First DCA affirmed without a written

opinion.   This constitutes a ruling on the merits and is entitled to AEDPA

deference.   *See* 28 U.S.C. § 2254(d); <u>Harrington</u>, 562 U.S. at 98-100.

The state court record supports the post-conviction court's finding

that defense counsel vigorously cross-examined the victim, Richard

Bowden, and raised this issue of his identification of Hayes during closing.

Ex. D at 33-58; Ex. F at 354-71.   Bowden testified he was aware of Hayes

prior to the incident giving rise to the charges.   Ex. D at 41, 52-53.   In

particular, the transcript includes the following points on cross-examination

regarding Bowden's cataracts and ability to recognize people:

> Q.   All right.   Now has it refreshed your recollection on what you told law enforcement that day?
>
> A.   Yes, ma'am.
>
> Q.   And you told law enforcement you couldn't see good that night and that's, you kept dialing the Sheriff's Department number incorrectly?
>
> A.   Right.
>
> Q.   You described a guy that came in on you to Investigator Pelfrey and Investigator Cook as a black male, right?
>
> A.   Right.
>
> Q.   Told him he was wearing a hoody, sweatpants, and tennis shoes, right?
>
> A.   Right.

Q.   And you have, since this incident had your eyes corrected, right?

A.   I had cataracts on my eyes and I got them all taken off.

Q.   That was about six months after this incident occurred?

A.   I am not sure when it was.

Q.   If you gave a statement that says you had your cataracts done six months after this incident, that would be –

A.   Right.

Q.   Did you tell the investigators that you have difficult recognizing black people?

A.   I may have.

Q.   You just don't recognize them as well as you do white people?

A.   Right.

Q.   The guy that broke in on you wasn't wearing gloves, was he?

A.   No, ma'am.

Q.   Do you remember anything unusual about his hands?

A.   About his what?

Q.   His hands?

A.   No, ma'am.

Q.   Do you remember anything unusual about the person's teeth?

A.   No, ma'am.

Q.   So you were more focused on his eyes and what you thought was a gun?

A.   That right.

Q.   This all took place in about 90 seconds?

A.   That's probably, right.

Ex. D at 45-46.   During closing, defense counsel argued, in pertinent part:

Well, again let's talk about Mr. Bowden.   Now he says that he knows one hundred percent that Mr. Hayes is the person who came into his house.   Does he really know that, ladies and gentlemen?   Could he really see what he told you he could see?   We know that he had cataract surgery six months later. He actually said he couldn't see good that night.   Actually, he said he could; but then when I reminded him in his previous sworn statement he said he could not, then he remembered that's right, he couldn't.   And I also believe a jury instruction the Judge will read you that you can consider in assessing a witness' credibility past inconsistent statements.   Did they make a statement on the stand that was different than statements they made before?   I think y'all heard numerous time that Mr. Bowden made statements that were different on this stand then what they were back when the crime actually occurred.   Actually, he couldn't even see to call the correct telephone number for the Sheriff's Department.

Ex. F at 355-56.

Petitioner Hayes has not shown the state court's rejection of this

ground was either (1) contrary to, or involved an unreasonable application

of, clearly established U.S. Supreme Court precedent, or (2) based on an

unreasonable determination of the facts in light of the evidence presented

in the state court proceeding.   *See* 28 U.S.C. § 2254(d)(1)-(2).   This

ground should be denied.

## Ground 10:   IAC – Juror Strikes

In his tenth ground, Petitioner Hayes argues defense counsel

provided ineffective assistance by not properly challenging race-neutral

juror strikes during voir dire.   ECF No. 1 at 27.   Petitioner raised this

ground in state court as part of the first claim in his July 2014 amended

Rule 3.850 motion.   Ex. J at 41-46.   The state post-conviction court

summarily denied the claim, making the following findings:

> In **Ground 1**, the Defendant alleges that counsel was
> ineffective for failing to properly challenge race neutral juror
> strikes during voir dire process which resulted in African
> American jurors being excused as prospective jurors.   A
> defendant has no right to a jury composed in whole or in part of
> jurors of his or her own race, but "[p]urposeful racial
> discrimination in [jury selection] violates a defendant's right to
> equal protection because it denies him the protection that a trial
> by jury is intended to secure."   *See* Batson v. Kentucky, 476
> U.S. 79, 85-6 . . . (1986).   In State v. Neil, 457 So. 2d 481 (Fla.
> 1984) and its progeny, the Court outlined the following test to
> determine whether peremptory challenges are being used in a
> discriminatory manner:   Peremptory challenges are presumed
> to be exercised in a nondiscriminatory manner.   *See* Neil, 457

So. 2d at 486.   A party concerned about the other side's use of peremptory challenges must make a timely objection and demonstrate on the record that the challenged persons are members of a distinct racial group and may have been challenged solely because of their race.   *Id.*; State v. Johans, 613 So. 2d 1319, 1322 (Fla. 1993).   The burden then shifts to the complained-about party to show that the questioned challenges were not exercised solely because of the prospective jurors' race.   *See* Neil, 457 So. 2d at 486-87.   The reasons given in response to the court's inquiry need not be equivalent to those for a challenge for cause.   *Id.* at 487.   If the party shows that the challenges were based on characteristics of the challenged persons other than race, then the inquiry should end and jury selection should continue.   *Id.* On the other hand, if the party has actually been challenging prospective jurors solely on the basis of race, then the court should dismiss that jury pool and start voir dire over with a new pool.   *Id.*

In the instant case, counsel did request a race neutral reason for the strikes of potential jurors and the Court inquired from the State to provide a reason which was accepted.   (*See* attached Jury Selection Transcript 07/23/12, at pp. 63-65; 94-101; 170-77).   Thus, Defendant's claim is without merit. Additionally, Defendant's claim is not a legally cognizable claim for relief in light of his inability to establish prejudice.   *See* Jones v. State, 10 So. 3d 140 (Fla. 4th DCA 2009).

Ex. J at 54-55.   On appeal, the First DCA affirmed without a written opinion.   This constitutes a ruling on the merits and is entitled to AEDPA deference.   *See* 28 U.S.C. § 2254(d); Harrington, 562 U.S. at 98-100.

The state court record supports the post-conviction court's findings that defense counsel requested a race-neutral reason after the prosecution

exercised strikes against potential jurors.   Ex. C at 98-99 (transcript of jury

selection).   The trial court then asked the prosecutor the reasons for the

strikes, and the prosecutor gave race-neutral reasons, which the court

accepted.   *Id.*   In particular, the jury selection transcript provides:

> MS. JEFCOAT:   The state is going to strike number 24,
> Howard and number 32, Mr. Dawson.
>
> MS. FORGUE:   We request a race-neutral reason for that
> strike.
>
> THE COURT:   We do have to have that Neil-Slappy Inquiry as
> to jury number 24.
>
> MS. JEFCOAT:   Mr. Howard does not work, he's not
> employed, he's not going to school, he has had a little trouble
> communicating, and I was concerned that he might have
> trouble communicating in the jury room.
>
> MS. FORGUE:   I don't think his employment or school status
> affects his ability to sit on a jury.   His communication skills, it
> was not that he didn't understand, I think he had a speech
> impediment.
>
> MS. JEFCOAT:   That[] may be the case, but everybody else,
> up to that point, is either employed or is retired.   I'm on a
> robbery case, I want people that work for [a] living.
>
> THE COURT:   I do find that the communication issue is a race-
> neutral basis upon which to exercise a peremptory challenge,
> I'll allow the state to exercise a challenge.
>
> Now, as to jury number, 32.
>
> MS. JEFCOAT:   For the reasons I stated in the cause

challenge, your Honor, he said he would have trouble sitting in judgment of somebody and trouble sending a person to jail, that he would feel responsible.

MS. FORGUE:   I think you cleared that up with him, I don't think it's an issue.

THE COURT:   I don't find that that is a race-neutral basis.   I do think Mr. Dawson indicated that he could serve.   I'm sorry, I do find there was no race issue that was raised, rather, by the state.   The Court indicate[d] to Mr. Dawson the difference between the two roles, that of a juror and that of the Court, and he seemed to indicate then that he would stay and that gets him half way there.

The Court still does believe it is a proper basis for the state to exercise a peremptory challenge, based upon that issue of judgment.   The Court will also note that during the jury questioning, Mr. Dawson at times would close his eyes and appeared to be sleeping and was startled as he sat back up and at times did appear somewhat board [sic] and none-attentive as well.   So, I will allow the state to issue that strike.

*Id.* at 98-99; *see id.* at 20-21, 63-65.

Petitioner Hayes has not shown the state court's rejection of this ground was either (1) contrary to, or involved an unreasonable application of, clearly established U.S. Supreme Court precedent, or (2) based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.   *See* 28 U.S.C. § 2254(d)(1)-(2).   This ground should be denied.

## Conclusion

Based on the foregoing, Petitioner Orinthid Jabbar Hayes is not entitled to federal habeas relief.   The § 2254 petition (ECF No. 1) should be denied.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."   Rule 11(b) provides that a timely notice of appeal must still be filed, even if the court issues a certificate of appealability.

Petitioner fails to make a substantial showing of the denial of a constitutional right.   28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (explaining substantial showing) (citation omitted). Therefore, the Court should deny a certificate of appealability.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."   The parties shall make any argument as to

whether a certificate should issue by objections to this Report and Recommendation.

Leave to appeal in forma pauperis should also be denied.  *See* Fed. R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is filed, the court may certify appeal is not in good faith or party is not otherwise entitled to appeal in forma pauperis).

## Recommendation

It is therefore respectfully **RECOMMENDED** that the Court **DENY** the § 2254 petition (ECF No. 1).   It is further **RECOMMENDED** that a certificate of appealability be **DENIED** and that leave to appeal in forma pauperis be **DENIED**.

**IN CHAMBERS** at Tallahassee, Florida, on September 4, 2018.

**S/ Charles A. Stampelos**
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2).   A copy of the objections shall be served upon all other parties.   A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.   Fed. R. Civ. P. 72(b)(2).   Any different deadline that may**

**appear on the electronic docket is for the Court's internal use only and does not control**.   If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.   *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.